Duval & Stachenfeld LLP
Attorneys for Plaintiff
By: Allan N. Taffet, Esq.
101 Park Avenue, 11th Floor
New York, New York 10178
Tel. No.: (212) 883-1700

**11 CIV 0232**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
CREDIT SUISSE SECURITIES (USA) LLC,

                                                Plaintiff,

                    -against-

GRAND CIRCLE LLC and
GRAND CIRCLE RIVER CRUISE LINES LLC,

                                    Defendants.
------------------------------------------------------------- x

**COMPLAINT**

11 Civ. _____

**ECF Case**

      Plaintiff Credit Suisse Securities (USA) LLC (hereinafter "Credit Suisse" or "Plaintiff"), by its attorneys, Duval & Stachenfeld LLP, for its complaint against defendants Grand Circle LLC and Grand Circle River Cruise Lines LLC (collectively, "Grand Circle" or the "Company"), alleges as follows:

### THE PARTIES

      1.    Plaintiff Credit Suisse is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business in New York, New York.

      2.    Upon information and belief, defendant Grand Circle LLC is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business in Boston, Massachusetts. Upon information and belief, Grand Circle

LLC's sole member, Alan E. Lewis ("Lewis"), is a resident of the Commonwealth of Massachusetts.

3. Upon information and belief, defendant Grand Circle River Cruise Lines LLC is a limited liability company organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Boston, Massachusetts. Upon information and belief, Grand Circle River Cruise Line LLC's sole member, Lewis, is a resident of the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

4. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is diversity between the parties.

5. The Court has jurisdiction over all claims and personal jurisdiction over Grand Circle pursuant to New York Civil Practice Law and Rules §§ 301 & 302 and Fed. R. Civ. P. 4(k)(1)(A), and pursuant to a written contract, dated May 9, 2007, whereby it was agreed that the "parties hereto consent to the exclusive jurisdiction of . . . the United States District Court for the Southern District of New York." Upon information and belief, Grand Circle transacts business in New York and regularly solicits business, or engages in a persistent course of conduct in New York, derives substantial revenue from goods used or services rendered in New York, and derives substantial revenue from interstate or international commerce.

6. Venue is proper in the Southern District of New York pursuant to a written contract whereby Grand Circle agreed to submit any claim arising from the contract to a court in this District, as set forth in ¶ 5 above, and pursuant to 28 U.S.C. § 1391(b)(2),

because a substantial part of the events giving rise to the claims occurred in the Southern District of New York.

## FACTUAL ALLEGATIONS

### Grand Circle and Credit Suisse Enter Into a Written Agreement

7. On or about May 9, 2007, Credit Suisse entered into a duly executed written agreement (the "Agreement") with Grand Circle, whereby Grand Circle engaged Credit Suisse to act as its "exclusive financial advisor" in connection with a potential sale of the Company. (Attached hereto as Exhibit A is a true and correct copy of the Agreement, the terms of which are incorporated in this complaint).

8. Pursuant to the Agreement, Credit Suisse was to provide, if requested, a range of services, including but not limited to: (1) "analyzing and evaluating the business, operations and financial position of the Company;" (2) "preparing an offering memorandum for distribution and presentation to potential purchasers;" (3) "screening of interested prospective purchasers;" (4) coordinating "potential purchasers' due diligence investigations;" (5) "evaluating proposals which are received from potential purchasers;" and (6) "structuring and negotiating the Sale" of the Company. See Agreement at 1.

9. In return for the performance of these services, the Agreement provided that Credit Suisse would receive a fee "equal to 1.10% of the Aggregate Consideration [as defined in the Agreement] in connection with the Sale" of the Company. Agreement at 2. This fee would be payable "upon the initial closing in connection with the Sale." Id.

10. The Agreement further provided that in the event Grand Circle received a bid of a certain threshold amount (a "Bid") to purchase the Company, but did not subsequently

consummate a sale -- for any reason -- Credit Suisse would receive a fee of $1,000,000 (the "Transaction Fee"). Specifically, the Agreement provided as follows:

> In the event the Company decides for any reason not to consummate a Sale following receipt of a bid valuing the Company at not less than 7.0 times the Company's 2007 earnings before interest, taxes, depreciation and amortization, a Transaction Fee of $1.0 million shall be payable at the time the Company decides not to pursue a Sale.

Agreement at 2.

11.     Additionally, Grand Circle was also obligated to reimburse Credit Suisse for "all reasonable expenses" resulting from Credit Suisse's engagement under the Agreement. See Agreement at 2.

12.     Pursuant to the Agreement, Credit Suisse's engagement thereunder could terminate "at any time by either Credit Suisse or the Company upon ten days' prior written notice thereof to the other party." Agreement at 4. Notwithstanding any such termination, Credit Suisse would be entitled to the Transaction Fee, in the event that Grand Circle did not consummate a sale after receipt of a Bid.

**Grand Circle Receives a Bid to Purchase the Company**

13.     In December 2007, Court Square Capital Partners ("Court Square") -- a New York-based private equity firm -- offered to purchase the Company for a total consideration of $770,000,000, including fees and expenses (the "Purchase Price").

14.     The Purchase Price was "not less than 7.0 times the Company's 2007 earnings before interest, taxes, depreciation and amortization." See Agreement at 2. Accordingly, Court Square's offer to purchase the Company qualified as a Bid under the terms of the Agreement.

4

15.     On or about December 7, 2007, Court Square and Grand Circle documented Court Square's Bid by entering into a duly executed Sale and Purchase Agreement (the "Sale and Purchase Agreement") whereby Court Square agreed to purchase the Company.

16.     A few days later, on December 11, 2007, the deal was announced by Lewis, the Chairman and Chief Executive Officer of Grand Circle and was reported in the press by multiple media outlets, including the Boston Business Journal.

17.     Between December 2007 and May 2008, Credit Suisse performed services in connection with Court Square's Bid to purchase the Company.

**Grand Circle Fails to Consummate the Sale And Terminates the Agreement**

18.     On or about April 15, 2008, Grand Circle decided not to pursue the sale of the Company to Court Square and terminated the transaction.

19.     On or about April 11, 2008, Grand Circle sent written notice of its intent to terminate the Agreement (the "Termination Notice"). Ten days later, on April 21, 2008, Credit Suisse's engagement under the Agreement terminated.

**Grand Circle Breaches the Agreement**

20.     Grand Circle's decision not to consummate the sale of the Company to Court Square triggered the payment of the $1,000,000 Transaction Fee to Credit Suisse.

21.     On May 14, 2008, Credit Suisse sent an invoice (the "Invoice") to Lewis for payment of: (1) the $1,000,000 Transaction Fee; and (2) Credit Suisse's reasonable out-of-pocket expenses of $110,636.68. (A true and correct copy of the Invoice is attached hereto as Exhibit B).

22.     To date, despite written demand, the Transaction Fee and Credit Suisse's expenses -- totaling $1,110,636.68 -- has not been remitted to Credit Suisse by Grand Circle.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

23.     Plaintiff Credit Suisse realleges paragraphs 1 through 22 of this complaint as if fully set forth herein.

24.     Credit Suisse entered into the written, duly executed Agreement on or about May 9, 2007, for valuable consideration, and Credit Suisse has fully performed its obligations under the Agreement.

25.     Grand Circle has failed to perform its obligations under the Agreement. Specifically, despite due demand, Grand Circle has failed to remit the Transaction Fee of $1,000,000 and $110,636.68 for Credit Suisse's reasonable expenses.

26.     Due to Grand Circle's breach of the Agreement, Credit Suisse has suffered damages in an amount to be determined a trial.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

27.     Plaintiff Credit Suisse realleges paragraphs 1 through 26 of this complaint as if fully set forth herein.

28.     Grand Circle has had the benefit of the services Credit Suisse performed under the Agreement.

29.     Grand Circle has wrongfully refused, however, to remit the Transaction Fee and Credit Suisse's reasonable expenses, causing Credit Suisse to lose the use of those moneys due and owing, and requiring Credit Suisse to incur attorneys' fees to recover these costs due under the Agreement. It would be unjust and inequitable to allow Grand Circle to benefit in this manner.

30. By reason of the foregoing, Grand Circle has been unjustly enriched at the expense of Credit Suisse, and Credit Suisse has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Credit Suisse respectfully requests judgment against Grand Circle LLC and Grand Circle River Cruise Lines LLC as follows:

A. Awarding Credit Suisse damages to be established at trial plus statutory interest thereon, attorneys' fees and expenses; and

B. Granting Credit Suisse such other and further relief as the Court may deem just and proper.

Dated: New York, New York
January 11, 2011

> Duval & Stachenfeld LLP
> Attorneys for Plaintiff
> Credit Suisse Securities (USA) LLC
>
> By: _____
> Allan N. Taffet, Esq.
> 101 Park Avenue, 11th Floor
> New York, New York 10178
> Tel. No.: (212) 883-1700
> Fax No.: (212) 883-8883

# EXHIBIT A

**CREDIT SUISSE**

CREDIT SUISSE SECURITIES (USA) LLC
Eleven Madison Avenue          Phone     212 325 2000
New York, NY 10010-3629        www.credit-suisse.com

May 9, 2007

Mr. Alan E. Lewis
Manager
Grand Circle LLC
Grand Circle River Cruise Lines LLC
347 Congress Street
Boston, MA  02210

Dear Alan:

This letter agreement confirms our understanding that Grand Circle LLC and Grand Circle River Cruise Lines LLC (collectively, the "Company" or "you") has engaged Credit Suisse Securities (USA) LLC and its affiliates, successors and assigns, as appropriate ("Credit Suisse", "we" or "us"), to act as its exclusive financial advisor with respect to the Sale (as defined below) of the Company.

As part of our engagement, we will, if appropriate and if requested:

(a) assist you in analyzing and evaluating the business, operations and financial position of the Company;

(b) assist you in preparing an offering memorandum for distribution and presentation to potential purchasers approved in advance by the Company;

(c) assist you in the preparation and implementation of a marketing plan;

(d) assist you in the screening of interested prospective purchasers;

(e) assist you in coordinating the data room and with potential purchasers' due diligence investigations;

(f) assist you in evaluating proposals which are received from potential purchasers; and

(g) assist you in structuring and negotiating the Sale.

In connection with Credit Suisse's engagement, the Company will furnish Credit Suisse with all information concerning the Company which Credit Suisse reasonably deems appropriate and will provide Credit Suisse with access to the Company's officers, directors, employees, accountants, counsel and other representatives (collectively, the "Representatives"), it being understood that Credit Suisse will rely solely upon such information supplied by the Company and its Representatives without assuming any responsibility for independent investigation or verification thereof. The treatment and use of all non-public information concerning the Company which is given to Credit Suisse in connection with this engagement shall be governed by the terms of the Confidentiality Agreement, dated as of April 25, 2006, as amended, between the Company and Credit Suisse, attached hereto, which Confidentiality Agreement shall be

**CREDIT SUISSE**

deemed to have been reexecuted on the date hereof, and since be deemed to refer to this letter agreement rather than the engagement letter dated April 24, 2006.

As compensation for our services hereunder, the Company agrees to pay Credit Suisse a transaction fee equal to 1.10% of the Aggregate Consideration (as defined below) in connection with the Sale; provided, however, that if the Sale (as hereinafter defined) is consummated after March 31, 2008, the Transaction Fee shall be 0.90% of the Aggregate Consideration in connection with the Sale (the "Transaction Fee").

The Transaction Fee shall be payable upon the initial closing in connection with the Sale. In the event the Company decides for any reason not to consummate a Sale following receipt of a bid valuing the Company at not less than 7.0 times the Company's 2007 earnings before interest, taxes, depreciation and amortization, a Transaction Fee of $1.0 million shall be payable at the time the Company decides not to pursue a Sale.

In addition, the Company agrees to periodically reimburse Credit Suisse for all reasonable expenses, including the reasonable fees and expenses of its legal counsel, if any, and any other advisor retained by Credit Suisse (it being understood that the retention of any such advisor, other than legal counsel, will be made with the prior approval of the Company), resulting from or arising out of this engagement; *provided* that, except in connection with the matters set forth in Annex A, the Company shall not be obligated to reimburse Credit Suisse for expenses pursuant to this paragraph which in the aggregate exceed $100,000 unless approved in advance by the Company.

All fees and expenses payable hereunder are net of all applicable withholding and similar taxes.

For purposes of this agreement, the term "Sale" shall be defined to include (i) the sale to an unaffiliated third party (whether in one or a series of transactions) of a majority of the assets or the capital stock of the Company (including the assets or the capital stock of any company acquired by the Company after the date hereof), (ii) any recapitalization, restructuring or liquidation of the Company by the current owners, a third party or any combination thereof, or (iii) any other form of disposition, in each of the cases (ii) and (iii), which results in the effective sale of a majority of the principal business or operations of the Company by the current owners.

Also for purposes of this agreement, the term "Aggregate Consideration" shall mean (i) the total fair market value (at the time of closing) of all consideration (including cash, securities, property and any other form of consideration) paid or payable, or otherwise to be distributed, directly or indirectly, to the Company or the Company's owners in connection with the Sale, plus (ii) without duplication, the principal amount of all indebtedness for borrowed money (exclusive of customer deposits), capital leases and preferred stock obligations of the Company assumed, retired, repaid, redeemed or defeased in connection with the Sale or remaining on the balance sheet of the Company at the closing of the Sale, minus (iii) the sum of (x) the amount of any cash or cash equivalents on the Company's balance sheet at the time of the closing of the Sale ("Company Cash") and (y) the amount of any Company Cash as of immediately prior to the closing of the Sale distributed to the Company's owners in connection with the Sale to the extent included in (i) above. Aggregate Consideration shall also include the capitalization of any leases entered into in contemplation of the Sale in connection with the m/s Paul Gauguin valued assuming 8.0x the annual lease expense obligation. Any

# CREDIT SUISSE

amounts to be paid by the Company to Credit Suisse in connection with the Sale that are contingent upon events after the consummation of the Sale (including any amounts placed in escrow) shall be estimated for the purposes of calculating the Transaction Fee at an expected net present value mutually agreeable to you and us at the time of closing, which such net present value shall be calculated taking into account the timing of expected payments, the probability or risk of receiving such payments and other factors as may be mutually agreed.

Except for communications with the Company's Representatives in connection with the evaluation of a Sale or as required by judicial or regulatory process, no advice rendered by Credit Suisse, whether formal or informal, may be disclosed, in whole or in part, or summarized, excerpted from or otherwise referred to without our prior written consent. In addition, Credit Suisse may not be otherwise referred to without its prior written consent. The Company (and each employee, representative or other agent of the Company) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the Sale and all materials of any kind (including opinions or other tax analyses) that are provided to the Company relating to such tax treatment and structure.

The Company acknowledges that Credit Suisse may, (i) at its option and expense and after announcement of the Sale, place customary tombstone announcements or advertisements on Credit Suisse's Internet Website and in such financial and other newspapers and journals as it may choose, stating that Credit Suisse has acted as financial advisor to the Company in connection with the Sale and (ii) include the Company's name on a client list for marketing purposes; *provided*, that (i) no such publicity, announcement or advertisement shall include the dollar amount or value of the Sale unless such dollar amount or value has been previously disclosed to the public in writing by the Company or the acquiror involved in such Sale, and (ii) any other publicity or public announcement or advertisement regarding the Sale and Credit Suisse's role in it shall be subject to the prior approval of the Company, which shall not be unreasonably withheld or delayed; *provided, however,* that no announcement or advertisement shall be subject to the prior approval of the Company if such form of announcement or advertisement previously has been approved by the Company. Furthermore, if requested by Credit Suisse, the Company may include a mutually acceptable reference to Credit Suisse in any press release or other public announcement made by the Company regarding the matters described in this letter.

Since Credit Suisse will be acting on behalf of the Company in connection with its engagement hereunder, the Company and Credit Suisse agree to the indemnity provisions and other matters set forth in Annex A which is incorporated by reference into this agreement.

The Company understands that if Credit Suisse is asked to act for the Company in any other formal additional capacity relating to this engagement but not specifically addressed in this letter, such as acting as an underwriter in connection with the issuance of securities by the Company or furnishing the Company with a financial opinion letter, then such activities shall constitute separate engagements and the terms and conditions of any such additional engagements will be embodied in one or more separate written agreements, containing provisions and terms to be mutually agreed upon, including without limitation appropriate indemnification provisions. The indemnity provisions in the Annex A referred to above shall apply to any such additional engagements, unless

/3

**CREDIT SUISSE**

superseded by an indemnity provision set forth in a separate Annex A applicable to any such additional engagements, and shall remain in full force and effect regardless of any completion, modification or termination of Credit Suisse's engagement(s).

Credit Suisse's engagement hereunder may be terminated at any time by either Credit Suisse or the Company upon ten days' prior written notice thereof to the other party; *provided, however,* that in the event of any termination of Credit Suisse's engagement hereunder by the Company, Credit Suisse will continue to be entitled to its full Transaction Fee provided for herein (less any portion thereof paid by the Company if it elected not to pursue a prior sale) in the event that at any time prior to the expiration of twelve (12) months after any such termination the Company consummates, or enters into an agreement providing for, a Sale; and *provided, further,* that no termination of Credit Suisse's engagement hereunder shall affect the Company's obligations to pay the other fees and expenses to the extent provided for herein and to indemnify Credit Suisse and certain related persons and entities as provided in Annex A referred to above.

The Company acknowledges that Credit Suisse may provide or otherwise assist prospective purchasers in obtaining, all or a portion of the financing with respect to a proposed Sale. The Company agrees on its own behalf and, to the extent permitted by applicable law, on behalf of its security holders, to waive any claims it or they may have based on any actual or potential conflicts of interest that may arise or result from Credit Suisse's engagement by the Company hereunder and Credit Suisse providing financing or assistance in obtaining financing to prospective purchasers. Any information received in connection with this engagement may be shared with Credit Suisse's internal Credit and Investment Banking Committees in order to assist them in evaluating possible financings or financing roles. In addition, the Company agrees that (i) although Credit Suisse may, in the course of providing or seeking to provide financing or assistance in obtaining financing to prospective purchasers, acquire information about such prospective purchasers or their strategies and proposals, Credit Suisse shall have no obligation to disclose such information, or the fact that Credit Suisse is in possession of such information, to the Company or to use such information for the benefit of the Company and (ii) Credit Suisse shall be entitled to act as it deems appropriate to protect its interests as an underwriter, creditor or in other financing roles or capacities including, without limitation, by exercising any power, discretion, right or remedy; withholding any agreement, consent, waiver or approval; or making any other decision or determination.

Credit Suisse is a full service securities firm engaged in securities trading and brokerage activities as well as providing investment banking and financial advisory services. In the ordinary course of business, Credit Suisse and its affiliates may provide investment banking and other financial services to, and/or acquire, hold or sell, for their own accounts and the accounts of customers, equity, debt and other securities and financial instruments (including bank loans and other obligations) of, the Company and any other company that may be involved in the matters contemplated by this agreement. In addition, Credit Suisse and its affiliates and certain of their respective employees, including members of the team performing this engagement, as well as certain private equity funds associated or affiliated with Credit Suisse in which they may have financial interests, may from time to time acquire, hold or make direct or indirect investments in, or otherwise finance, a wide variety of companies, including prospective purchasers and their respective affiliates. With respect to any securities, financial instruments and/or investments so held by Credit Suisse or any of its affiliates or customers, all rights in respect of such securities, financial instruments and investments, including any voting

**CREDIT SUISSE**

rights, will be exercised by the holder of the rights, in its sole discretion. Credit Suisse has adopted policies and procedures designed to preserve the independence of its research analysts whose views may differ from those of Credit Suisse 's investment banking division.

The Company acknowledges and agrees that Credit Suisse has been retained solely to act as exclusive financial advisor with respect to a Transaction and that no fiduciary or agency relationship between the Company and Credit Suisse has been created in respect of any Transaction or Credit Suisse's engagement hereunder, regardless of whether Credit Suisse has advised or is advising the Company on other matters. In connection with this engagement, Credit Suisse is acting as an independent contractor and not in any other capacity, with obligations owing solely to the Company. All aspects of the relationship created by this agreement shall be governed by and construed in accordance with the laws of the State of New York, applicable to contracts made and to be performed therein.

We are delighted to accept this engagement and look forward to working with you on this assignment. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this agreement.

Very truly yours,

CREDIT SUISSE SECURITIES (USA) LLC

By: _____
    Name:  Adam S. Davies
    Title: Director

Accepted and agreed to as of the date first written above:

GRAND CIRCLE LLC

By: _____
    Name:  Alan E. Lewis
    Title: Manager

GRAND CIRCLE RIVER CRUISE LINES LLC

By: _____
    Name:  Alan E. Lewis
    Title: Manager

/5

Prior to entering into any agreement or arrangement with respect to, or effecting, any merger, statutory exchange or other business combination or proposed sale or exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth herein, the Company will notify Credit Suisse in writing thereof (if not previously so notified) and, if requested by Credit Suisse, shall arrange in connection therewith to have the surviving or continuing entity assume the obligations of the Company set forth herein.

The Company's obligations hereunder shall be joint and several and shall be in addition to any rights that any Indemnified Person may have at common law or otherwise. The Company acknowledges that in connection with the engagement Credit Suisse is acting as an independent contractor and not in any other capacity with obligations owing solely to the Company. This agreement and any other agreements relating to the engagement shall be governed by and construed in accordance with the laws of the State of New York, applicable to contracts made and to be performed therein and, in connection therewith, the parties hereto consent to the exclusive jurisdiction of the Supreme Court of the State of New York or the United States District Court for the Southern District of New York, in each case sitting in New York County, and the respective appellate courts thereof. Notwithstanding the foregoing, solely for purposes of enforcing the Company's obligations hereunder, the Company consents to personal jurisdiction, service and venue in any court proceeding in which any claim subject to this agreement is brought by or against any Indemnified Person. CREDIT SUISSE HEREBY AGREES, AND THE COMPANY HEREBY AGREES ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS SECURITY HOLDERS, TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTER-CLAIM OR ACTION ARISING OUT OF THE ENGAGEMENT OR CREDIT SUISSE'S PERFORMANCE THEREOF.

The provisions of this agreement shall apply to the engagement (including related activities prior to the date hereof) and any modification thereof and shall remain in full force and effect regardless of the completion or termination of the engagement. If any term, provision, covenant or restriction herein is held by a court of competent jurisdiction to be invalid, void or unenforceable or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

17

## ANNEX A

May 9, 2007

In further consideration of the agreements contained in our engagement letter dated the date hereof (the "engagement"), in the event that Credit Suisse Securities (USA) LLC ("Credit Suisse") or any of its affiliates, the respective directors, officers, partners, agents or employees of Credit Suisse or any of its affiliates, or any other person controlling Credit Suisse or any of its affiliates (collectively, "Indemnified Persons") becomes involved in any capacity in any action, claim, suit, investigation or proceeding, actual or threatened, brought by or against any person, including members of Grand Circle LLC and Grand Circle River Cruise Lines LLC (collectively, the "Company"), in connection with or as a result of the engagement or any matter referred to in the engagement, the Company will reimburse such Indemnified Person for its reasonable and customary legal and other expenses (including without limitation the costs and expenses incurred in connection with investigating, preparing for and responding to third party subpoenas or enforcing the engagement) incurred in connection therewith as such expenses are incurred. The Company will also indemnify and hold harmless any Indemnified Person from and against, and the Company agrees that no Indemnified Person shall have any liability to the Company or its owners, parents, affiliates, security holders or creditors for, any losses, claims, damages or liabilities (including actions or proceedings in respect thereof) (collectively, "Losses") (A) related to or arising out of (i) the Company's actions or failures to act (including statements or omissions made or information provided by the Company or its agents) or (ii) actions or failures to act by an Indemnified Person with the Company's consent or in reliance on the Company's actions or failures to act or (B) otherwise related to or arising out of the engagement or Credit Suisse's performance thereof, except that this clause (B) shall not apply to the extent that any Losses are finally determined by a court or arbitral tribunal to have resulted from the bad faith or gross negligence of such Indemnified Person. If such indemnification is for any reason not available or insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses involved in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and by Credit Suisse, on the other hand, with respect to the engagement or, if such allocation is determined by a court or arbitral tribunal to be unavailable, in such proportion as is appropriate to reflect other equitable considerations such as the relative fault of the Company on the one hand and of Credit Suisse on the other hand; *provided, however,* that, to the extent permitted by applicable law, the Indemnified Persons shall not be responsible for amounts which in the aggregate are in excess of the amount of all fees actually received by Credit Suisse from the Company in connection with the engagement. Relative benefits to the Company, on the one hand, and Credit Suisse, on the other hand, with respect to the engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by the engagement, bears to (ii) all fees actually received by Credit Suisse in connection with the engagement.

The Company will not, without Credit Suisse's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes a release of each Indemnified Person from any liabilities arising out of such action, claim, suit, investigation or proceeding. The Company will not permit any such settlement, compromise, consent or termination to include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of an Indemnified Person, without such Indemnified Person's prior written consent. No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to herein.

# EXHIBIT B

# CREDIT SUISSE

CREDIT SUISSE SECURITIES (USA) LLC
Eleven Madison Avenue
New York, NY 10010-3629

Phone 1 212 325 4905
Fax 1 212 743 1188
www.credit-suisse.com

Alan Lewis
Chief Executive Officer
Grand Circle Corporation
347 Congress Street
Boston, MA 02210

Lawrence A. Hamdan
Vice Chairman
Mergers and Acquisitions
lawrence.hamdan@credit-suisse.com

May 14, 2008

Dear Alan,

Please find enclosed the invoice for the fee and all reasonable out-of-pocket expenses resulting from or arising out of the engagement between Grand Circle Corporation and Credit Suisse Securities (USA) LLC in relation to Project Fenway. I will keep in touch as the year progresses.

Best regards,

*Larry*

**CREDIT SUISSE SECURITIES (USA) LLC**

# CREDIT SUISSE

7035 Louis Stephens Dr, Building 1
Research Triangle Park, NC 27709
Attn: Elizabeth Canjar, 3rd floor
(919) 994-6312

In account with    Grand Circle Corporation
347 Congress Street
Boston, MA 02210

Attention:    Alan Lewis
Chief Executive Officer

Client code:    GGL5
Date:    May 13, 2008

| | |
|---|---:|
| For services rendered in connection with the sale of Grand Circle. | |
| Advisory Fee | $ 1,000,000.00 |
| Out-of-Pocket Expenses | 110,636.68 |
| **TOTAL** | $ 1,110,636.68 |

**FOR US DOLLAR PAYMENTS**
*Please remit via wire:*
  CITIBANK
  111 Wall Street
  New York, NY
  For the Account of Credit Suisse LLC
  Account Number: 09253506
  ABA Number: 021000089
  Attn: Accounts Receivable Dept. – IBD / Elizabeth Canjar
  REF: **GGL5**

#827201 v3 - Project Fenway - Invoice (May 2008)